UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND BUILDING & BRIDGE, CO., INC., <br><br> Plaintiff, <br><br> v. <br><br> TOWN OF COHASSET, <br><br> Defendant/ Third-Party Plaintiff, <br><br> v. <br><br> CDM SMITH, INC., <br><br> Third-Party Defendant. | Civil Action No. 21-cv-11567-DJC |

MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                                      **May 21, 2024**

## I.  Introduction

Plaintiff New England Building & Bridge, Co., Inc. ("NEBB") filed this lawsuit against Defendant Town of Cohasset (the "Town") asserting state law claims arising out of work NEBB performed as a contractor on the Town's dam rehabilitation project. D. 1. Shortly after the lawsuit commenced, the Town filed a third-party complaint against CDM Smith, Inc. ("CDM Smith"), the Town's engineering firm, seeking contractual indemnification for any liability to NEBB arising out of CDM Smith's negligence or reckless or intentional misconduct. D. 14. CDM Smith has moved for summary judgment as to the third-party complaint. D. 45. For the reasons stated below, the Court ALLOWS CDM Smith's motion for summary judgment.

1

**II.     Standard of Review**

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (citation omitted). The movant "bears the burden of demonstrating the absence of a genuine issue of material fact." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986), but must come forward with specific, admissible facts showing that there is a genuine issue for trial. See Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

**III.    Factual Background**

The Court draws the following facts from the parties' statements of undisputed facts, responses to the same and accompanying exhibits, D. 46, D. 52, D. 58, D. 61. Unless otherwise noted, these facts are undisputed.

On November 10, 2015, the Town and CDM Smith entered an engineering services contract ("Engineering Contract"). D. 61 ¶ 1. Under the Engineering Contract, CDM Smith performed design and construction administration services for the Town's efforts to repair the Bound Brook Dam (the "Project"). Id. ¶¶ 1, 3. The Engineering Contract also contained an indemnification provision which provides that CDM Smith "shall assume the defense, indemnify and [h]old harmless the TOWN, the TOWN's agents and employees, from and against all losses

and all claims, demands, payments, suits, actions, recoveries and Judgements brought or recovered against them to the extent of the negligent acts, errors or omissions, reckless or intentional misconduct of [CDM Smith], its agent(s), officers, employees or subcontractors in the execution of the work or in guarding the same." D. 46-2 at 4; D. 61 ¶ 9.

In August 2016, the Town awarded a contract for the construction work to NEBB (the "Construction Contract"). D. 61 ¶ 4 (citing D. 14 ¶ 5); see D. 1 ¶ 8. On September 23, 2021, NEBB sued the Town for breaching the Construction Contract and failing to pay NEBB for the work NEBB performed on the Project. D. 61 ¶ 5; see D. 1. On November 19, 2021, shortly after NEBB initiated its action against the Town, the Town impleaded CDM Smith as a third-party defendant. D. 61 ¶ 7; see D. 14. The Town seeks indemnification for any liability it owes "to NEBB on account of errors or omissions or intentional misconduct in CDM [Smith]'s performance of the [Engineering] Contract." D. 14 ¶ 13. Although the Town's complaint does not specify precise acts of negligence by CDM Smith, the Town references allegations in NEBB's complaint "that certain elements of the Project design prepared by CDM [Smith] were deficient, that CDM [Smith] nevertheless provided erroneous assurances that its design was adequate for the Project, and that on account of those deficiencies and CDM [Smith]'s assurances NEBB incurred additional costs to perform the work of the Project, for which it claims the Town is responsible." D. 14 ¶ 8.

NEBB's complaint identified several challenges that negatively affected its performance of the Construction Contract. D. 1 ¶¶ 9–38. Of particular relevance here, NEBB alleged that the Construction Contract "required the design of a cofferdam, drainage bypass system, the dewatering of the area adjacent to the cofferdam and required installation of piping to maintain a minimum

water flow of sixty cubic feet per second."[1]  D. 1 ¶ 20.  The Construction Contract specified the "use of a 30" diameter siphon pipe" to ensure adequate drainage and CDM Smith "assur[ed]" that a 30-inch pipe was adequate.  D. 1 ¶¶ 21–22.  NEBB alleged that "it quickly became apparent that the 30" pipe was grossly insufficient for the actual field conditions encountered" and that NEBB and the Town sought out an outside engineering firm, which concluded that "there was a problem with the hydraulic calculations and modeling."  D. 1 ¶¶ 24–26.  This issue, combined with other delays described in NEBB's complaint, allegedly cost NEBB "lost months of work pumping out the additional and unanticipated water" and required the installation of new pumps for which NEBB has not been paid by the Town.  D. 1 ¶¶ 27–28, 32–33.

### IV.  Procedural History

NEBB filed this lawsuit against the Town on September 23, 2021,  D. 1, and the Town, in turn, impleaded CDM Smith, seeking indemnification for any liability to NEBB.  D. 14.  CDM Smith has moved for summary judgment as to the third-party complaint.  D. 45.[2]  The Court heard the parties on the pending motion and took the matter under advisement.  D. 63.

### V.  Discussion

The Town and CDM Smith agree that the language of the Engineering Contract requires CDM Smith to indemnify the Town for liability "to the extent of the negligent acts, errors or omissions, reckless or intentional misconduct of [CDM Smith]."  D. 61 ¶ 9.  Both parties further agree that "the Town is not asserting reckless or intentional misconduct by CDM Smith."  D. 51

---

[1] As alleged by NEBB, the cofferdam system is a "water diversion channel" that "would enable [NEBB] to work in the water during the restricted time of year period" imposed by the Massachusetts Department of Fisheries.  D. 1 ¶¶ 7, 9.

[2] CDM filed leave to file a reply brief, D. 56, and the Town moved to file a surreply brief, D. 59.  The Court ALLOWS both motions *nunc pro tunc* and has considered those briefs, D. 57 and D. 60, in the resolution of CDM's motion for summary judgment.

4

at 4 n.3; see D. 47 at 3 n.1.  Thus, to obtain indemnification, the Town must show that NEBB's claims stem from CDM Smith's "negligent acts, error or omissions."  D. 47 at 3.

### A. CDM Smith's Contractual Duty to Indemnify

Under Massachusetts law, "a contract-based right to indemnification exists only if there is a binding contract between indemnitor and indemnitee in which such right is expressed or from which it can be fairly implied."  Franklin v. Gen. Elec. Co., No. CIV. A. 95-1079, 1997 WL 401560, at *2 (Mass. Super. Ct. July 2, 1997) (citing Kelly v. Dimeo, Inc., 31 Mass. App. Ct. 626, 628 (1991)).  Indemnification clauses are "to be interpreted like any other contract, with attention to language, background, and purpose."  Herson v. New Boston Garden Corp., 40 Mass. App. Ct. 779, 782 (1996).  Unambiguous contract language must be interpreted "according to its plain terms."  Bank v. Int'l Bus. Machines Corp., 145 F.3d 420, 424 (1st Cir. 1998).

Here, it is undisputed that in the Engineering Contract, CDM Smith promised to indemnify the Town under Article VIII, "to the extent of the negligent acts, errors or omissions, reckless or intentional misconduct of [CDM Smith], its agent(s), officers, employees or subcontractors in the execution of the work [in the Engineering Contract] or in guarding the same."  D. 46-2 at 4; D. 61 ¶ 9.  Accordingly, losses caused by CDM Smith's negligence would fall within the plain language of the indemnification clause in the Engineering Contract.  See Hayes v. CRGE Foxborough, LLC, 167 F. Supp. 3d 229, 249 (D. Mass. 2016).

To the extent that the Town argues that Article VIII does not require it to show CDM Smith's negligence, the Court rejects that argument.  Here, where the plain language of Article VIII requires a showing of "negligent acts, errors or omissions" by CDM Smith in the execution of its work, the Town must show such negligence (which means that CDM Smith had a duty, breached such duty, and as a result, harmed execution of the contracted work).  See Hayes, 167 F.

Supp. 3d at 248-49 (noting that the contractual indemnification language required a showing of negligence).

The Town argues that because its claim is for indemnification rather than an "affirmativ[e]" negligence claim, CDM Smith's motion is premature because its underlying dispute with NEBB has not been adjudicated. D. 51 at 3-4. However, when no factual dispute needs to be decided for the Court to conclude that the indemnitor is not liable, dismissal of the indemnification claim is not premature, simply because the underlying dispute resolved. LeBlanc v. Logan Hilton Joint Venture, 463 Mass. 316, 331-32 (2012) (affirming summary judgment that no obligation to indemnify existed where losses resulted from negligent act of third-party and such losses were excluded under language of indemnification clause). Here, CDM Smith asserts that the Town has adduced insufficient evidence to present any dispute of fact as to CDM Smith's negligence. If that is true, CDM Smith would have no obligation to indemnify the Town under the terms of the Engineering Contract.

In its surreply, the Town attempts to shift the burden of establishing CDM Smith's negligence to Plaintiff NEBB, stating that "[i]t is NEBB that has alleged negligence, and NEBB has presented expert witnesses in support of its allegations." D. 60 at 2. It is the Town's duty, not NEBB's, to prove the basis for indemnification from CDM Smith as it alleged in its third-party complaint. See D. 14 ¶ 10 (alleging that "[i]n Article VIII of the [Engineering] Contract, CDM [Smith] agreed to indemnify the Town for claims asserted against the Town based on negligent acts, errors or omissions and/or reckless or intentional misconduct in CDM [Smith]'s performance of the [Engineering] Contract"), ¶ 12 (alleging that "[t]he errors and omissions in CDM [Smith]'s performance of the [Engineering] Contract as alleged by NEBB would, if true, constitute negligence and/or intentional misconduct by CDM [Smith] in such performance"). The discovery

6

schedules proposed by the parties and set by the Court applied to all claims in this litigation.  D. 28; D. 30; D. 38; D. 39; D. 40.  Even by the Town's accounting, the trial involving all parties including third-party defendant, CDM Smith, would proceed if this summary judgment motion is denied.  See Jakobiec v. Merrill Lynch Life Ins. Co., 711 F.3d 217, 226 (1st Cir. 2013) (affirming summary judgment because plaintiffs failed to produce evidence concerning an essential element of their claim and "[t]he summary judgment stage is 'the put up or shut up moment in litigation'") (internal citation and quotation marks omitted).

For all of these reasons, the Court declines to reject CMD Smith's motion as premature given that the Town had an obligation to adduce evidence in support of its indemnification claim and ample opportunity to do so.

**B.      Need for Expert Testimony**

To establish negligence, the Town must adduce evidence that CDM Smith owed it a duty of care, that it breached its duty and that the breach caused the Town to suffer injury.  See Jupin v. Kask, 447 Mass. 141, 146 (2006).  CDM Smith asserts that because this is "a case involving professional negligence and technical subject matter," the Town "must produce expert testimony regarding the applicable standard of professional care, a deviation from the standard, and a resulting injury."  D. 47 at 5.  Where the Town's theory of the case is that CDM Smith failed to conform to the standard of care of a reasonable engineer, expert testimony may be necessary to establish what the reasonable engineer's standard of care was and how CDM Smith deviated from that standard.  Atlas Tack Corp. v. Donabed, 47 Mass. App. Ct. 221, 226 (1999); see LeBlanc, 463 Mass. at 329 (recognizing that "[e]xpert testimony is generally needed to establish [architect's] professional standard of care").  An exception exists "where the malpractice 'is so gross or obvious that laymen can rely on their common knowledge to recognize or infer negligence.'"  LeBlanc, 463 Mass. at 329, 330-31 (quoting Pongonis v. Saab, 396 Mass. 1005, 1005 (1985)) (concluding

7

that expert testimony was unnecessary where evidence showed that design team "actually knew of the deficiencies but failed to fulfill its contractual duty to report the deficiencies" and "where the deficiencies presented so obvious a risk to the safety of any [operator]"); see Parent v. Stone & Webster Eng'g Corp., 408 Mass. 108, 115 n.8 (1990) (concluding that expert testimony was not required where documentary evidence showed defendant discovered or should have discovered that high voltage electrical panel was not properly labeled).

As an initial matter, CDM Smith asserts that "in its Third-Party Complaint, the Town claimed merely that certain aspects of NEBB's Complaint raised design issues that were CDM Smith's responsibility, and did not explain which aspects of NEBB's claim may implicate CDM Smith." D. 47 at 6. In its opposition (and surreply brief), the Town clarifies that CDM Smith was implicated by NEBB's allegations regarding the inadequacy of the 30-inch siphon pipe. D. 51 at 3 (quoting D. 1 ¶¶ 21, 24, 27); D. 60 at 4. The Town does not identify any other basis for its indemnification and the Court does not see any suggestion in either NEBB's complaint or in the Town's third-party complaint that CDM Smith otherwise negligently contributed to NEBB's alleged damages in its dispute with the Town. Accordingly, the Court focuses its analysis on whether the Town has adduced sufficient evidence that CDM Smith was negligent in specifying that a 30-inch pipe be used in the Project's drainage system and assuring NEBB that a 30-inch pipe was sufficient.

Here, whether a reasonable engineer would have recommended the use of a 30-inch siphon pipe, rather than a wider pipe, in the Project's drainage system is not a matter to which a lay jury can apply its common sense to recognize or infer negligence. See Goldenberg v. Norris, 87 Mass. App. Ct. 1124, 1124, 2015 WL 3404354, at *2 (2015) (unpublished) (affirming summary judgment in favor of defendant architect where plaintiff produced no expert testimony that defendant's

advice to "employ conservative measures instead of advising [plaintiff] to immediately undertake the soil boring test" was negligent). The facts alleged in NEBB's complaint suggest that the system was more complex than a single pipe draining water from a collected pool. See D. 1 ¶ 20. NEBB alleges that another engineering firm found "a problem with the hydraulic calculations and modeling." Id. ¶ 26. While it may be possible to explain to a lay jury the volume of water a 30-inch siphon pipe carries away, as the Town suggests, it is not obvious how a reasonable engineer would have determined whether that volume was sufficient given the needs of a particular project. See D. 51 at 5.

Although the Town asserts that this case boils down to the amount of water allowed to flow out of the work area, the Town offers no evidence from which a lay jury could determine how much water actually needed to flow out of the area or how much water a reasonable engineer would have accounted for. D. 51 at 5. The fact that the 30-inch siphon pipe ultimately failed does not mean that CDM Smith was necessarily negligent for having recommended it in the first place, if for instance, rainfall at the Project site was much higher than a reasonable engineer could have anticipated at the time. See Golden v. Amory, 329 Mass. 484, 487 (1952) (holding that defendants were not negligent "even if some other action than that taken would have been better" where they failed to account for sudden heavy rain). Indeed, if the issue was caused by a difference between "actual field conditions" rather than "the anticipated flow for a one-year and two-year storm, with ten inches of rain accumulating over a thirty-day period," as suggested by NEBB's complaint, D. 1 ¶¶ 20, 24, then expert testimony would be required to establish whether a reasonable engineer would have anticipated the actual field conditions and designed around them. See Canterbury Auto., Inc. v. City of Worcester, No. 2011-01486, 2014 WL 841628, at *4-5 (Mass. Super. Jan. 15, 2014) (granting summary judgment in favor of City where plaintiff provided no expert

9

testimony to support claim that City negligently maintained its sewer and storm water drainage system and thus caused plaintiff's damage after severe rain storm).

The present case is distinguishable from Gillis v. Town of Uxbridge, in which the Massachusetts Appeals Court concluded that non-expert evidence was sufficient to establish plaintiffs' nuisance claim. Gillis v. Town of Uxbridge, 103 Mass. App. Ct. 100, 104-05 (2023). The Gillis plaintiff introduced evidence that their property had never flooded until the town elevated an adjacent road and removed a berm between the road and plaintiffs' downhill property. Id. at 103. After the work was performed, plaintiffs' property "experienced regular and significant flooding." Id. First, although a plaintiff must establish "substantial and unreasonable interference" to succeed on a nuisance claim, the Gillis plaintiffs did not need to prove deviation from a professional standard of care by the defendant town or otherwise demonstrate the town's negligence. See id. at 102. Second, Gillis presented an intuitive "before" and "after" scenario, from which a lay jury could conclude that the dramatic difference in flooding experienced was caused by a particular event. Id. at 103. The Town has adduced no analogous evidence in this case from which a jury could readily conclude that the Project worksite's drainage was caused by 30-inch pipe siphon pipe and that such action was unreasonable.

The Town has not offered a theory of CDM Smith's liability based on mistakes "so gross or obvious" that a lay jury could apply common sense and recognize negligence. Cf. Hayes, 167 F. Supp. 3d at 247 (holding that architectural expert was not required where architect certified building as compliant with building code despite never visiting worksite or remaining familiar with construction and noting that expert testimony had been offered as to defective nature of stairs which allegedly caused plaintiff's fall). Thus, the general rule that expert testimony is required to

establish the professional standard of care and any breach in that standard of care applies to this case.  See Atlas Tack, 47 Mass. App. Ct. at 226.

      **C.**      **Proffer of Expert Evidence**

The Town argues that even if expert testimony is required, sufficient expert evidence has been offered by Plaintiff NEBB.  D. 51 at 6-7; D. 60 at 3-5.  First, the Town points to NEBB's disclosure of engineering expert Gregory Berube of PARE Corporation.  The Town argues that "Mr. Berube will testify that PARE designed the coffer dam and water diversion system per the Project's plans and specifications, and that NEBB properly installed the coffer dam and water diversion system.  Mr. Berube will further testify that the design was insufficient for the actual Project conditions, including but not limited to the amount of water required to be diverted from the Project.  Mr. Berube will further testify that NEBB encountered differing side conditions [sic] than those specified in the Bid and Design Documents."  D. 51 at 6-7 (quoting D. 52 at 8).  Berube's expected testimony does not address the standard of care for a reasonable engineer and whether CDM Smith met that standard.  The closest Berube appears to come to testifying that CDM Smith's contribution to the Project was insufficient was the testimony that "NEBB encountered differing site conditions than those specified in the Bid and Design Documents."  Id.  As explained above, the fact that CDM Smith's specifications did not match actual field conditions does not establish negligence.  To prevail, the Town must "demonstrate the applicable professional engineering standard in *this* case."  Atlas Tack, 47 Mass. App. Ct. at 226 (emphasis in original); see Davis v. 575 Worcester Rd., LLC, 72 Mass. App. Ct. 1119, 1119, 2008 WL 4414607, at *2 (2008) (unpublished) (concluding that expert testimony did not raise issue of fact as to property owner's negligence where summaries of expert testimony stated "that various protective devices . . . could have been used and likely would have prevented [plaintiff's] injury in this case" but did not cite industry standards or practices and did not "specifically conclude that such barriers were warranted

11

in this case to eliminate an unreasonably dangerous condition"), how CDM failed to meet it and the harm that this failure caused.

Second, the Town points to CDM Smith's own expert, Derek Etkin, who "is expected to disagree (with the disclosed-anticipated, expert testimony of Mr. Gregory Berube of Pare) 'that Pare designed the coffer dam and water diversion system per the Project's plans and specifications, and that the design was insufficient for the actual Project conditions[.]'" D. 51 at 7 (quoting D. 52 at 12 (alteration in original)). For the same reasons discussed above as to Berube's opinion, anticipated testimony as to the insufficiency of PARE's design does not meet the Town's burden of establishing CDM Smith's negligence. Etkin's expert disclosure is perhaps more detailed than Berube's and indicates his anticipated testimony will include "factual and expert testimony concerning the engineering-design work conducted, and associated hydraulic calculations performed, by himself and CDM [Smith]." D. 52 at 11. Even so, the proffer regarding Etkin's testimony does not offer any anticipated testimony that CDM Smith failed to meet industry standards and caused the damage alleged. Thus, Etkin's testimony is similarly insufficient to establish the relevant standard of care and a breach of that standard that caused NEBB's damages.

In its surreply, the Town refers to "other NEBB witnesses," who "prepared an extensive report." D. 60 at 3-4.[3] This report, prepared by Vertex Companies, addressed NEBB's reliance on the Town's and CDM Smith's designs for the Project, events and unforeseen conditions that contributed to the Project delay, and an analysis of NEBB's potential damages. See D. 60 at 8-21. Much like the Berube disclosure, the excerpts of this Vertex report provided to the Court fail to establish professional negligence on the part of CDM Smith. Although the Vertex report

---

[3] The Town indicates that it "called out" these additional witnesses in its opposition, D. 60 at 3, where it made only passing reference to "two engineers from the Vertex Companies, LLC, including Lance VanDemark" in a footnote. D. 51 at 7 n.4.

characterizes CDM Smith's siphon design as "deficient" and not "adequate," D. 60 at 17, 18, these statements simply reflect the fact that the siphon pipe turned out to be insufficient. The report does not lay out the standard of care of a reasonable engineer designing the siphon pipe or explain how CDM Smith failed to meet that standard in making its design recommendation. See Aponte-Bermúdez v. Colon, 944 F.3d 963, 964 (1st Cir. 2019) (affirming judgment as a matter of law at close of plaintiff's evidence where plaintiff argued that roadside terrace was negligently designed based on its location and durability where experts did not testify as to standard of care for engineers designing roadside structures); Davis, 72 Mass. App. Ct. at 1119.

Accordingly, the Court concludes that the Town has failed to adduce evidence showing that "a trier of fact could reasonably resolve that issue in [its] favor" as to the Town's third-party claim against CDM Smith. See Borges, 605 F.3d at 5 (internal citation omitted).

## VI.    Conclusion

For the foregoing reasons, the Court ALLOWS CDM Smith's motion for summary judgment, D. 45.

**So Ordered.**

/s Denise J. Casper
United States District Judge