UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND BUILDING & BRIDGE, CO., INC.,<br><br>        Plaintiff,<br><br>        v.<br><br>TOWN OF COHASSET,<br><br>        Defendant/<br>        Third-Party Plaintiff,<br><br>        v.<br><br>CDM SMITH, INC.,<br><br>        Third-Party Defendant. | Civil Action No. 21-cv-11567-DJC |

**MEMORANDUM OF DECISION**

**CASPER, J.**                                                                                      **December 19, 2024**

**I.      INTRODUCTION**

Plaintiff New England Building & Bridge, Co., Inc. ("NEBB") filed this lawsuit against Defendant Town of Cohasset (the "Town") asserting state law claims arising out of work NEBB performed as a contractor on the Town's dam rehabilitation project. The Town and NEBB have since settled. D. 70. What then remained was the third-party action between the Town and CDM Smith, Inc. ("CDM Smith"), the Town's engineering firm. After entering summary judgment on the Town's claims against CDM Smith for contractual indemnification, D. 64, only CDM Smith's

1

counterclaims, Count I (breach of contract) and Count II (unjust enrichment), against the Town remained for a bench trial. D. 22 at 6-8. Perhaps because its attention previously was focused on litigation (and then settlement) with NEBB, the Town raised two legal challenges to both counterclaims on the eve of the bench trial. D. 93; D. 94 at 2-15. After hearing counsel's arguments about this matter at the Final Pretrial Conference, the Court allowed the parties to file proposed findings of facts and conclusions of law, particularly focused on this issue, D. 104, and postponed the first day of trial to hear further argument from counsel. D. 112. After hearing those additional arguments and expressing concerns about the need for trial where the challenges to the breach of contract and unjust enrichment claims raised by the Town were matters of law for which no further factual development was required, the Court gave CDM Smith an opportunity for additional briefing on the matter (and the Town the opportunity to respond). Id. After having considered that further briefing, D. 115; D. 118, and having had heard the parties on this matter, the Court concludes that there remains no disputed factual issues for trial on either the breach of contract claim or the unjust enrichment claim. Accordingly, the Court now issues its findings of facts and conclusions of law on the aforementioned claims and shall enter judgment for the Town on these claims.

## II.   PROCEDURAL HISTORY

NEBB filed this lawsuit against the Town on September 23, 2021, D. 1, and the Town, in turn, impleaded CDM Smith, seeking indemnification for any liability to NEBB. D. 14. CDM Smith filed a counterclaim against the Town and a crossclaim against NEBB. D. 22. After CDM Smith moved for summary judgment on the Town's claims seeking contractual indemnification against them, the Court allowed the motion. D. 64. Following summary judgment, NEBB and the

Town entered into a settlement resolving all claims between the two parties, D. 70, and CDM Smith dismissed its crossclaim against NEBB. D. 77. Accordingly, only CDM Smith's counterclaims, Count I (breach of contract) and Count II (unjust enrichment), against the Town remain for the Court.

### III. FINDINGS OF FACT

The Court has already recited the undisputed facts in this matter in its Memorandum and Order allowing CDM Smith's motion for summary judgment, D. 64, and incorporates those facts by reference here. The Court makes the following findings of fact (which also are not disputed) as to its ruling on Count I and Count II of CDM Smith's counterclaims below.

#### A. Contract Between CDM Smith and the Town

1. On or about November 10, 2015, the Town and CDM Smith entered into a "Contract for Services" providing that CDM Smith would provide "Design, Permitting and Construction Services for the Bound Brook Dam Repairs Project" (hereinafter "Project") between November 10, 2015 and December 31, 2016" (the "Contract"). D. 107 ¶ 1; D. 109 ¶ 9.

2. The Contract stated a not-to-exceed contract price of $246,395. D. 107 ¶ 1; D. 109 ¶ 11.

3. In relevant part, the Contract provided that the "TOWN shall pay to [CDM Smith] the sum set forth any invoice (sic) which has been approved by the Town Manager or his/her authorized designee." D. 109 ¶ 14.

4. As to any amendments, the Contract provided that: "[t]he provisions contained in this contract may be modified only by the express written consent of the parties. Any amendments must be made only by written amendment executed by all signatories to the original agreement, prior to the effective date of the amendment." Id. ¶ 17.

3

5.  The Contract also includes an integration clause: "[t]his contract constitutes the entire Agreement of the parties hereto with respect to the subject matter hereto, and no representations, inducements, promises or agreements, oral or otherwise, between the parties hereto with respect to the subject matter hereof not embodied herein shall be of any force or effect."  Id. ¶ 18.

### B.  Contract with NEBB and CDM Smith's Work on the Project

6.  On July 22, 2016, the Town and NEBB entered into a construction contract for the Project.  D. 107 ¶ 5; D. 109 ¶ 23.

7.  Despite having contracted with NEBB for the Project to be completed by May 31, 2017, the Town did not extend the Contract with CDM Smith correspondingly.  D. 107 ¶ 6.

8.  As contemplated by the Town-NEBB Contract, NEBB's work on the Project continued beyond the December 31, 2016 end date of the Contract.  See id. ¶ 9.

9.  In general, the Project encompassed replacement of a culvert at the bridge on Beechwood Street spanning Bound Brook and associated work.  D. 109 ¶ 24.

10. The design for the Project included a system of dewatering and drainage control, including a bypass pipe, that would divert water so as to allow for a dry work area both upstream and downstream from the bridge and culvert structures.  Id. ¶ 25.

11. In late 2016 and early 2017, the Project encountered various problems, the causes of which were vigorously debated between and among the Town, CDM Smith, and NEBB.  D. 107 ¶ 10; see D. 109 ¶¶ 32-36.

12. Prior to December 31, 2016, the Town and CDM Smith began to negotiate a formal written amendment to their contract that would serve to (a) extend the duration of the Town-CDM

Smith Contract, and (b) confirm CDM Smith's compensation for the past and future out-of- scope services requested by the Town. D. 107 ¶ 8.

### C. Amendments to the Contract between the Town and CDM Smith

13. At the end of May 2017, CDM Smith and the Town engaged in a mediation regarding CDM Smith's request for payment of unpaid invoices and additional compensation for the Project. D. 109 ¶ 49.

14. Following the mediation, the Town and CDM Smith signed Amendment No. 1 to the Contract. D. 109 ¶ 50; see D. 107 ¶ 14.

15. "Amendment No. 1" to the Contract, dated June 2, 2017, provided as follows:

   a. The Agreement expiration date in Article II shall be extended from December 31, 2016 to September 30, 2017. If additional time is needed to complete construction, the TOWN and CONTRACTOR agree to negotiate an appropriate extension.

   b. The Town shall pay outstanding [CDM Smith] invoices #1, #2, #3 for (Resident Engineer ("RE") Services) for the base contract, totaling $64,852.88 (see attached breakdown) by June 9, 2017.

   c. [CDM Smith] shall provide detail for invoices #3, #4 for (General Services/ Design ("GS/DN")) services by June 2, 2017. The Town shall review and respond by June 12, 2017 and pay undisputed amounts by June 19, 2017.

   d. [CDM Smith] shall submit its analysis on the merit of the construction contractor's claims related to the bypass system to the Town by June 7, 2017.

   e. The Town and [CDM Smith] agree to meet and negotiate on or before June 30, 2017 the costs incurred over and above the original contract amount as said costs

        relate to the 30-inch temporary bypass pipe and disputed amounts in invoices #3 and #4 for GS/DN services, if any.  D. 107 ¶¶ 3, 14; see D. 109 ¶ 12, 50.

16. Amendment No. 1 contains the following concluding statement: "[t]he parties reserve all rights and remedies with respect to the Agreement. The parties make no admissions of liability, or any concessions or changes to the Agreement other than those set forth in this Amendment."  D. 109 ¶ 51.

17. The Town and CDM Smith took the following respective actions in the immediate aftermath of Amendment No. 1:

    a. CDM Smith continued working on the Project, and issuing invoices for its ongoing work, as requested and understood by the Town;

    b. The Town paid RE Invoices #1 (invoiced on or about November 17, 2016), #2 (invoiced on or about December 13, 2016), and #3 (invoiced on or about February 24, 2017) on or about June 12, 2017;

    c. CDM Smith provided detail for GS/DN Invoices #3 and #4 on or about June 2, 2017; and

    d. The Town paid and disputed separate portions of GS/DN Invoice #3 (invoiced on or about April 25, 2016) on or about June 9, 2016; and, paid and disputed separate portions of GS/DN Invoice #4 (invoiced on or about March 10, 2017) on or about June 19, 2017.  D. 107 ¶ 15; see D. 109 ¶¶ 54-55.

18. Given ongoing disputes about invoices, CDM Smith and Town representatives continued to meet and communicate in the spring and summer 2017.  D. 109 ¶¶ 52-55, 57.

19. In late September 2017, the Town and CDM Smith met to discuss these ongoing issues, and this meeting resulted in "Amendment No. 2" to the Contract, dated September 29, 2017, which provided as follows:

    a. The Agreement expiration date in Article II shall be extended from September 30, 2017 to November 30, 2017. If additional time is needed to complete Project close out, the Town and CDM Smith agree to negotiate an appropriate extension.

    b. The Town and CDM Smith agree to meet on or before November 3, 2017 to discuss:

        i. Payment of CDM Smith invoices #4, #5, #6 for RE Services and #5, #6, #7 for GS/DN Services and any subsequent invoices for services during the extended construction duration;

        ii. The remaining disputed value of GS/DN Service Invoices #3 and #4 in the amount of $26,093.52;

        iii. CDM Smith proposed costs related to additional, out-of-scope GS/DN services in the amount of $125,738 (see attached Table 2); and

        iv. Town-incurred costs related to the 30-inch temporary bypass pipe. D. 107 ¶ 16; D. 109 ¶ 60.

20. Amendment No. 2 also included the same reservation of rights and denial of liability language as was included in Amendment No. 1, which stated that: "[t]he parties reserve all rights and remedies with respect to the Agreement. The parties make no admissions of liability, or any concessions or changes to the Agreement other than those set forth in this Amendment. D. 109 ¶ 61; see Ex. 4.

21. In the immediate aftermath of Amendment No. 2, CDM Smith continued working on the Project. D. 107 ¶ 18.

22. As of the end of October 2017, NEBB had not completed the construction work of the Project, and the Town terminated its contract with NEBB in early November 2017. D. 109 ¶ 62.

23. Despite continued meetings between the Town and CDM Smith about outstanding invoices including some that the Town might pursue NEBB's surety for any monies invoiced by CDM Smith and continued negotiations about the invoices, the parties did not amend the Contract as to all remaining invoices. See D. 107 ¶¶ 19-20, 23-24.

24. On or about January 29, 2018, the Town and CDM Smith entered into "Amendment No. 3" to the Contract, which extended the Contract duration from November 30, 2017 to February 28, 2018, and which increased the Contract value from $246,394.05 to $259,769.05 to account for $13,375.00 worth of discrete engineering services specified in the Amendment. Id. ¶ 25; D. 109 ¶ 63.

25. Similar to the previous Amendments, Amendment No. 3 also provided that "[e]xcept as modified herein, all other terms and conditions of the Agreement shall remain in full force and effect." D. 109 ¶ 64.

26. In the immediate aftermath of Amendment No. 3, CDM Smith continued working on the Project and issuing invoices. D. 107 ¶¶ 27-31.

27. On or about November 6, 2018, the Town and CDM Smith entered into "Amendment No. 4" to the Contract, which extended the Contract duration from February 28, 2018 to February 28, 2019, and which increased the Contract value from $259,769.05 to $287,869.05, to account for $28,100.00 worth of discrete engineering services specified in the Amendment. Id. ¶ 32; D. 109 ¶ 65.

28. Like Amendment No. 3, Amendment No. 4 provided that "[e]xcept as modified herein, all other terms and conditions of the Agreement shall remain in full force and effect." D. 109 ¶ 66.

29. The Town has paid CDM Smith a total of $292,891.71 on account of services under the Contract and in connection with the Project. Id. ¶ 68.

30. By the conclusion of the Project, the status of CDM Smith's RE Invoices and GD/DN Invoices were as follows:

| Invoice | Invoice Date | Invoice Period | Invoice Amount | Paid | Disputed | Unpaid |
|---|---|---|---|---|---|---|
| GS/DN #1 | 3/9/16 | 11/10/15 to 2/20/16 | $49,247.35 | $49,247.35 on 6/16/16 | - | - |
| GS/DN #2 | 4/25/16 | 2/21/16 to 3/18/16 | $41,682.87 | $41,682.87 on 6/9/16 | - | - |
| GS/DN #3 | 3/10/17 | 3/19/16 to 3/4/17 | $68,146.16 | $44,942.85 ~ 6/19/17 | $23,203.31 | - |
| GS/DN #4 | 5/19/17 | 3/5/2017 to 4/19/17 | $10,415.89 | $7,525.68 ~ 6/19/17 | $2,890.21 | - |
| GS/DN #5 | 5/22/17 | 4/20/17 to 5/13/17 | $10,250.06 | - | - | $10,250.06 |
| GS/DN #6 | 6/30/17 | 5/14/17 to 6/17/17 | $14,329.74 | - | - | $14,329.74 |
| GS/DN #7 | 8/26/17 | 6/18/17 to 8/19/17 | $17,790.68 | - | - | $17,790.68 |
| GS/DN #8 | 10/4/17 | 8/20/17 to 9/23/17 | $6,619.20 | - | - | $6,619.20 |
| GS/DN #9 | 11/6/17 | 9/24/17 to 10/21/17 | $5,858.28 | - | - | $5,858.28 |
| GS/DN #10 | 2/24/18 | 10/22/17 to 2/17/18 | $10,885.33 | $10,885.33 ~ 7/20/18 | - | - |
| GS/DN #11 | 4/25/18 | 2/18/18 to 4/14/18 | $6,389.84 | - | - | $6,389.84 |
| GS/DN #12 | 6/13/18 | 4/15/18 to 5/12/18 | $2,244.75 | - | - | $2,244.75 |
| GS/DN #13 | 8/11/18 | 5/13/18 to 8/11/18 | $6,946.63 | $6,946.63 on 11/14/18 | - | - |
| **GS/DN Total** | | | **$250,806.78** | **$161,230.71** | **$26,093.52** | **$63,482.55** |
| | | | | | | |
| RE #1 | 11/17/16 | 10/24/16 to 11/5/16 | $8,311.82 | $8,311.82 on 6/12/17 | - | - |
| RE #2 | 12/13/16 | 11/6/16 to 12/3/16 | $12,700.79 | $12,700.79 on 6/12/17 | - | - |
| RE #3 | 2/24/17 | 12/4/16 to 2/9/17 | $43,840.27 | $43,840.27 on 6/12/17 | - | - |
| RE #4 | 5/17/16 | 2/10/17 to 5/13/17 | $57,847.60 | - | - | $57,847.60 |

9

| | | | | | | |
|---|---|---|---|---|---|---|
| RE #5 | 6/30/17 | 5/14/17 to 6/17/17 | $26,079.26 | $26,079.26 on 12/1/17 | - | - |
| RE #6 | 8/26/17 | 6/18/17 to 8/19/17 | $50,766.87 | $12,064.11 on 12/1/17 | - | $38,702.76 |
| RE #7 | 10/4/17 | 8/20/17 to 9/23/17 | $6,077.71 | - | - | $6,077.71 |
| RE #8 | 11/6/17 | 9/24/17 to 10/21/17 | $415.60 | - | - | $415.60 |
| RE #9 | 2/24/18 | 10/22/17 to 2/17/18 | $564.75 | $564.75 on 7/20/18 | - | - |
| **RE Total** | | | **$206,604.67** | **$103,561.00** | **-** | **$103,043.67** |
| | | | | | | |
| **Total** | | | **$469,236.25** | **$264,791.71** | **$26,093.52** | **$166,526.22** |

D. 107 ¶ 33.

31. In June 2024, the Town settled the claims asserted by NEBB in its complaint in this action, by payment pursuant to an agreement for judgment in the amount of $415,000. D. 109 ¶ 67; see D. 70.

32. The Town Manager did not approve CDM Smith invoices for payment beyond the amount the Town has paid CDM Smith. D. 109 ¶ 69.

33. The Town never agreed with CDM Smith that it would pay CDM Smith more than the not-to-exceed Contract price, which as of Amendment No. 4, was $287,869.05. Id. ¶ 70.

34. Although the parties agreed, in writing (as required by the Contract) to amend the Contract in four, separate Amendments, they did not do so as to the outstanding invoices for which CDM Smith seeks payment. See D. 107 ¶¶ 19-20, 23-24, 33.

IV. **CONCLUSIONS OF LAW**

   A. **Breach of Contract (Count I)**

1. To prevail on a breach of contract claim, a plaintiff must show "(1) the existence of a valid and binding contract, (2) that the defendant breached the terms of the contract, and (3) that the plaintiff has suffered damages from the breach." D&N Corp. v. Intoccia, No. 14-P-

554, 2015 WL 3634106, at *2 (Mass. App. Ct. June 12, 2015) (unpublished) (internal citations omitted).

2. CDM Smith bears the burden of showing the elements of its breach of contract claim. See id. at *2; see Huang v. RE/MAX Leading Edge, 101 Mass. App. Ct. 150, 154 (2022).

3. The Contract was a valid contract and the parties do not dispute this element.

4. To show a breach of contract, CDM Smith must show breach of a provision of the Contract. See, e.g., D&N Corp., 2015 WL 3634106, at *2 (reasoning that plaintiff did not sustain its burden at trial on breach of contract claim because plaintiff failed to prove breach of a specific provision of an agreement).

5. CDM Smith has failed to show which provision of the Contract, even as amended by Amendments No. 1-4, the Town has breached by not paying the outstanding invoices.

6. To the extent that CDM Smith points to Section 2 of Amendment No. 2 to contend that the Town breached its agreement to pay the outstanding invoices, that provision does not reflect any agreement to pay, but instead that the "Town and CDM Smith agree to meet on or before November 3, 2017 to discuss "[p]ayment of CDM invoices #4, #5, #6 for RE Services and #5, #6, #7 for GS/DN Services "and any subsequent invoices for services during the extended construction duration;" "the remaining disputed value of GS/DN Services Invoices #3 and #4 in the amount of $26,093.52;" CDM Smith's proposed costs related to additional, out-of-scope GS/DN services and the costs to the town "related to the 30-inch temporary bypass pipe." See D. 107 ¶ 16; D. 109 ¶ 60; Ex. 4.

7. To the extent that CDM Smith contends that the part of Section of Amendment No. 2 as to "any subsequent invoices for services during the extended construction duration" is

11

ambiguous, D. 107 ¶ 16, "[w]hether a provision of a contract is ambiguous or not is a matter of law." Sawyer v. United States, 76 F. Supp. 3d 353, 358 (D. Mass. 2015) (internal quotation marks and citation omitted).

8. "Contract language is usually considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken . . . If an inquiring court concludes that an ambiguity exists in a contract, the ultimate resolution of it typically will turn on the parties' intent. Exploring the intent of contracting parties often (but not always) involves marshalling facts extrinsic to the language of the contract documents." Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 178 (1st Cir. 1995) (internal quotation marks and citation omitted); D. 107 at 12.

9. "[E]xtrinsic evidence is admissible to assist the factfinder in ascertaining the intent of the parties as imperfectly expressed in ambiguous contract language . . . In descending order of importance, extrinsic evidence may include: (1) the parties' negotiations on the particular [contract] . . . , (2) their course of performance . . . , (3) their prior course of dealing . . . , and (4) trade usage in the relevant [] industry." Den Norske Bank AS v. First Nat. Bank of Bos., 75 F.3d 49, 52–53 (1st Cir. 1996) (internal quotation marks and citation omitted); D. 107 at 13.

10. Section 2 of Amendment No. 2 is not ambiguous. On its face and clear language provides that the parties agree to meet and confer about a number of invoices and costs to both parties, but no agreement regarding payment of same. Ex. 4.

11. It is only when a contract term is ambiguous that a court considers extrinsic evidence. <u>Bank v. Thermo Elemental Inc.</u>, 451 Mass. 638, 648 (2008) (recognizing that "[t]o answer the ambiguity question, the court must first examine the language of the contract by itself, independent of extrinsic evidence concerning the drafting history or the intention of the matters"). In the absence of same and given the integration clause in the Contract, the parties' obligations are governed by the Contract as amended by Amendments Nos. 1 to 4. See <u>Guldseth v. Fam. Med. Assocs. LLC</u>, 45 F.4th 526, 541 (1st Cir. 2022) (affirming that plaintiff failed to prove his breach of contract claim based on an integrated agreement).

12. Since CDM Smith has not shown that the Town has breached any provision of the Contract, even as amended, its breach of contract counterclaim, Count I, fails.

### B. Unjust Enrichment

13. Unjust enrichment is "retention of money or property of another against the fundamental principles of justice or equity and good conscience. To succeed on a claim for unjust enrichment, a plaintiff must show (1) a benefit conferred upon defendant by plaintiff, (2) an appreciation or knowledge by defendant of the benefit, and (3) that acceptance or retention of the benefit under the circumstances would be inequitable without payment for its value." <u>Infinity Fluids Corp. v. Gen. Dynamics Land Sys., Inc</u>., 210 F. Supp. 3d 294, 309 (D. Mass. 2016) (internal quotation marks and citation omitted); D. 107 at 14.

14. Although a party can plead alternative causes of action for breach of contract and unjust enrichment, <u>Alantra LLC v. Apex Indus. Techs. LLC</u>, 636 F. Supp. 3d 223, 236 (D. Mass. 2022) (internal citations and quotations omitted), "[a] plaintiff is not entitled to recovery on a theory of quantum meruit where there is a valid contract that defines the obligations

of the parties." Bos. Med. Ctr. Corp. v. Sec'y of the Exec. Off. of Health & Hum. Servs., 463 Mass. 447, 467-69 (2012); see NRT Bus, Inc. v. City of Lowell, No. 2084-cv-01814BLS2, 2021 WL 3355333, at *5 (Mass. Super. June 4, 2021) (concluding that plaintiff "may not seek equitable relief under the doctrine of quantum meruit because it has valid contracts with the City that define the extent of [its] right to compensation"); MCI WorldCom Commc'ns, Inc. v. Dep't of Telecomms. & Energy, 442 Mass. 103, 116 (2004); D. 109 ¶ 21.

15. "It is also settled that limitations on the contracting power of municipal officers cannot be evaded by first rendering services or furnishing supplies without an express contract and then claiming under an implied contract for work performed or for goods sold and delivered." Adalian Bros. v. City of Bos., 323 Mass. 629, 632 (1949); see D. 109 ¶ 22.

16. That is, "[a] party cannot evade the statutory limitations on a municipality's contracting power by rendering services and subsequently seeking recovery based on alternative theories, such as quantum meruit." Baltazar Contractors, Inc. v. Lunenburg, 65 Mass. App. Ct. 718, 724 (2006) (internal quotation marks and citation omitted); see 109 ¶ 21.

17. Some of these cases involved contractors which violated a statute or bylaw that prevented their recovery under the operative contract, and thus the court concluded that they also could not recover in unjust enrichment. See Terrafix Envt. U.S.A., Inc. vs. BATG Envt., No. 09-cv-10852-GAO, 2010 WL 3219330, at *1 (D. Mass. Aug. 10, 2010) (reasoning that contractor tried to bring claim under inapplicable Mass. Gen. L. c. 149, § 29, and unjust enrichment claim sought to circumvent the statutory scheme which limited the municipality's contracting power); Baltazar Contractors, Inc., 65 Mass. App. Ct. at 724

14

(recognizing violation of statutory requirement that a contract with a municipality be in writing).

18. Another session of this court in Int'l Salt Co., LLC v. City of Bos., 547 F. Supp. 2d 62, 74 (D. Mass. 2008), aff'd, 590 F.3d 1 (1st Cir. 2009) denied quantum meruit relief against a municipality where the parties had entered into a valid, flat fee contract and agreed upon price for the contractor to provide salt, but due to heavy snowfalls the City had requested additional salt which the plaintiff delivered, and plaintiff sought to recover the fair market value of additional deliveries because the price of salt had increased during the course of the contract. See id. at 65-67, 74-75. The court concluded that plaintiff could not recover additional monetary relief against the municipality because there was a valid contract covering the scope of the parties' arrangement and any subsequent agreement was invalid because the contractor had not complied with the statutory requirements for a contract with a municipality. Id. at 74-75.

19. Given the state of law and the parties' obligations under the Contract, the Court concludes that CDM Smith is not entitled to a claim for unjust enrichment and it shall enter judgment for the Town on this counterclaim, Count II, as well.

## V.    CONCLUSION

In light of these findings of fact and conclusions of law, the Court shall enter judgment for the Town on CDM's counterclaims, Count I (breach of contract) and Count II (unjust enrichment).

**So Ordered.**

/s Denise J. Casper
United States District Judge